**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHRISTOPHER F. GOAD, SR.,       :           CIVIL ACTION NO. **4:CV-10-0711**
:
      Plaintiff,          :
:           (Judge Jones)
      v.                :           (Magistrate Judge Blewitt)
:
WILLIAM R. GRAY, et al.,        :
:
:
:
      Defendants     :

## REPORT AND RECOMMENDATION

### I. Background.

On April 2, 2010, Plaintiff, Christopher F. Goad, Sr., currently an inmate at the Low Security Correctional Institution at Allenwood ("LSCI-Allenwood"), White Deer, Pennsylvania, filed, *pro se*, this civil action, pursuant to 28 U.S.C. §1332. (Doc. 1). Plaintiff also filed a motion to proceed *in forma pauperis*. (Doc. 6). Plaintiff indicates that he is employed at LSCI-Allenwood and is compensated $120.00 per month. (*Id*.).

Named as Defendants are William R. Gray, an adult who resides in Richmond, Virginia, and Jane Doe, also a resident of Virginia. Plaintiff states that this Court's jurisdiction is based on diversity under § 1332(a) "[a]s the Plaintiff resides in [M.D. Pa.], the Defendants reside in the [Commonwealth] of Virginia and the amount in controversy exceeds [$75,000] therefore venue is proper pursuant to Title 28 U.S.C. §1391." (Doc. 1, p. 1, ¶ 1.).

Plaintiff states that he was taken into custody on April 8, 2008, in Virginia and that he has remained in custody since that date. Plaintiff also states that prior to his transfer to LSCI-Allenwood on March 6, 2009, he was confined in the Northern Neck Regional Jail ("NNRJ"), Warsaw, Virginia. Plaintiff indicates that his present claims largely arose when he was confined outside of the Middle District of Pennsylvania and when Defendants resided in Virginia.

Plaintiff's Complaint has not yet been served on Defendants, and his *in forma pauperis* Motion has not been decided.

**II. Allegations of Complaint**.

Plaintiff basically alleges in his Complaint that Defendant Gray is his half-brother who has custody of Plaintiff's minor son. Plaintiff avers that at the time Plaintiff and his wife were taken into federal custody on April 9, 2008 in Virginia, outside of the Middle District of Pennsylvania, he reached an oral agreement with Gray, who resided in Virginia, to allow his wife to live with Gray when she was released from prison and to give her a full-time job. Plaintiff also avers that in September 2008, while he was confined outside of the Middle District of Pennsylvania in NNRJ, he reached another oral agreement with Defendant Gray, who lived in Virginia at the time, "whereby Gray agreed to take possession of the personal property in the Plaintiff's home and to sell it [after 9-26-08] and use the monetary proceeds for the benefit of the Plaintiff and his son Joseph." (*Id.*, p. 3, ¶ 13.).[1]

Plaintiff further alleges that:

> 16. The Defendant [Gray] breached his agreement with the Plaintiff by proceeding to sell the Plaintiff's property prior to September 26, 2008; by refusing to provide an accounting to the Plaintiff of the proceeds of the sale; by refusing to use the proceeds for the benefit of the Plaintiff and/or Plaintiff son; and by using the proceeds of the sale of the property for his own benefit and unjust enrichment.

(*Id.*, ¶ 16.).

Plaintiff indicates that Defendant Gray beached their oral agreement with respect to the sale of his personal property, which agreement was entered into when Plaintiff was confined at the North Neck Regional Jail, Warsaw, Virginia, and when Gray resided in Virginia. Plaintiff alleges that after Defendant Gray removed Plaintiff's property from his home, seemingly in Virginia, Gray admitted to Plaintiff that he had Plaintiff's property in the attic of his Virginia home. Plaintiff avers that Defendant Gray breached their Virginia oral agreement by selling

---

1. According to the Records Department at LSCI-Allenwood, Plaintiff was originally confined, on April 8, 2008, at the Pamunkey Regional Jail, Hanover, Virginia. On April 30, 2008, he was transferred to the Piedmont Regional Jail in Farmville, Virginia. On May 9, 2008, he was transferred to the North Neck Regional Jail, Warsaw, Virginia. He was transferred to LSCI-Allenwood on March 6, 2009.

Plaintiff's property he held in Virginia without giving Plaintiff an accounting of what was sold and how much money he received, and by using "the proceeds from the sale of Plaintiff's property for his own purposes and to pay for his own expenses and not for the benefit of Plaintiff's wife and son." (*Id.*, p. 4, ¶ 19.).

Plaintiff states that he and Defendant Gray also had another oral agreement, clearly entered into when Plaintiff was confined outside of the Middle District of Pennsylvania and when Gray resided in Virginia, whereby Gray "agreed to take possession of [in Virginia] and later forward [from Virginia] to the Plaintiff certain numerous legal documents that the Plaintiff mailed or otherwise had delivered to Gray [in Virginia] for safekeeping." (*Id.*, ¶ 20.). Plaintiff indicates that the legal documents he sent to Defendant Gray, in Virginia, for Gray to hold for him in Virginia were confidential and pertained to his criminal case, and that Gray knew this. Plaintiff states that he also had his criminal defense attorney send Defendant Gray in Virginia additional legal documents and recorded telephone conversations. Plaintiff states that some of the documents send to Defendant Gray in Virginia to hold for him were legal documents regarding Plaintiff's criminal case, and some pertained to Plaintiff's wife and legal proceedings Plaintiff intended to file against his wife. Plaintiff essentially alleges that Defendant Gray beached this second oral agreement to hold Plaintiff's legal documents for safekeeping in Virginia. (*Id.*, p. 4).

Further, Plaintiff avers that, prior to the time he was transferred to FCI-Allenwood from the Northern Neck Regional Jail, Northern Neck prison officials mailed, in 6 envelopes, additional legal documents, legal mail and other confidential documents to Defendant Gray in Virginia for safekeeping. (*Id.*, p. 5). Plaintiff states that some of his documents mailed to Defendant Gray in Virginia from Northern Neck Regional Jail included letters that Plaintiff's wife sent to him from a different Regional Jail, and that these letters were very important to Plaintiff's

criminal case.[2]  Plaintiff also avers that, in addition to the 6 envelopes, he sent additional documents to Defendant Gray in Virginia for safekeeping.  Plaintiff then avers that when he requested Defendant Gray to send him the documents he was holding for Plaintiff, Gray only sent him some of the documents and failed to keep them confidential, in violation of their oral agreement entered into when Plaintiff was at Northern Neck Regional Jail and Defendant was in Virginia.   (*Id.*, pp. 6-7).

It is apparent from Plaintiff's pleading that all of his oral agreements with Defendant Gray were entered into when Plaintiff was confined at regional jails in Virginia and when Gray resided in Richmond, Virginia.  Also, all of Plaintiff's personal property was delivered to Defendant Gray's home in Richmond, Virginia, and it was held there and seemingly sold from there.  Also, all of the legal documents at issue were sent to Defendant Gray in Virginia, and he held them in Virginia.  Plaintiff also clearly indicates that Defendant Gray began to disseminate the information in Plaintiff's documents and on his recordings to others, in breach of their oral agreement in Virginia.  (*Id.*, pp. 8-9).

Additionally, Plaintiff avers that Defendant Gray and Defendant Jane Doe "agreed and conspired to alienate Joseph [Plaintiff's son] from the Plaintiff and did alienate Joseph from the Plaintiff."  (*Id.*, p. 10, ¶ 55.).  Again, it is abundantly clear from Plaintiff's pleading that this conduct occurred in Richmond, Virginia, where Defendant Gray resided with Plaintiff's son Joseph.

Plaintiff avers that he has suffered substantial damages as a result of Defendant Gray's alleged breaches of the oral agreements they clearly made in Virginia.  Plaintiff further avers:

> 62.  The Plaintiff's damages include the deprivation of the use and benefit of the proceeds of the sale of his personal property, as well as the use and benefit of Plaintiff's legal documents that the Defendant Gray withheld from the Plaintiff thus prohibiting and frustrating the Plaintiff's ability to appeal and challenge his criminal conviction and to

---

2.    It is clear that neither Plaintiff nor his wife were confined in the Middle District of Pennsylvania at this time.

> successfully prosecute his divorce action and other civil actions to be
> brought against the Plaintiff's wife and other potential defendants.

(*Id.*, p. 12, ¶ 62.).

In his Count I, Plaintiff asserts that Defendant Gray beached their oral agreements made in Virginia. In Count II, Plaintiff asserts an unjust enrichment claim against Defendant Gray and he avers that Gray became unjustly enriched by retaining his personal property in Virginia and by using the proceeds from the sale of Plaintiff's property for his own expenses and not those of his wife and son as they orally agreed. (*Id.*, p. 12). In Count III, Plaintiff asserts a conversion claim against Defendant Gray and he alleges that Gray wrongly exercised dominion and control over Plaintiff's property in Virginia, and that Gray sold his property in Virginia and kept the proceeds for his own expenses in violation of their oral agreements entered into in Virginia. (*Id.*, p. 13). In Count IV, Plaintiff raises a fraud claim against Defendant Gray and he alleges that Gray falsely represented he would abide by their oral agreement made in Virginia to hold Plaintiff's property for him and to safely keep Plaintiff's documents and recordings for him at Gray's Virginia home. As his final claim, Count V, Plaintiff raises an intentional infliction of emotional distress claim against Defendant Gray and he alleges that after Gray reviewed Plaintiff's documents and recordings he was holding for Plaintiff in Virginia, Gray made derogatory comments about Plaintiff to Plaintiff's son Joseph, who resided with Gray in Virginia. Plaintiff avers that this conduct by Gray caused his son to develop negative impressions about him. (*Id.*, p. 15). Plaintiff also avers that Defendant Gray's actions, all of which clearly occurred in Virginia, alienated the love and affection of his son and caused Plaintiff to suffer emotional distress.

Further, Plaintiff avers that at all relevant times, Defendant Jane Doe conspired with Defendant Gray, clearly in Virginia, and acted in concert with Gray. (*Id.*, p. 16).

As relief, Plaintiff requests an injunction preventing the two stated Virginia Defendants from any further breaches of the alleged oral contracts, conversion, fraud and emotional distress. Plaintiff also seeks the Court to direct Defendant Gray to provide an

**5**

accounting of all property Gray held for Plaintiff in Virginia, as well as all of the documents Gray held for Plaintiff in Virginia, and for the Court to impose a constructive trust on all of his property and documents in Gray's possession in Virginia. Finally, Plaintiff seeks both compensatory and punitive damages. (*Id.*, pp. 16-17).

## III. Screening Plaintiff's Complaint.

As stated, Plaintiff filed a Motion to proceed *in forma pauperis*. (Doc. 6).[3] Since Plaintiff filed a Motion to Proceed *in forma pauperis,* we are obliged to screen Plaintiff's pleading and to see if it is subject to dismissal under 28 U.S.C. §1915(e)(2)(B). As the Court stated in *O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.), "Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a Defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)."

Recently, in *Palencar v. Cobler Realty Advisors*, Civil No. 09-0325, M.D. Pa., 7-24-09 slip op. pp. 5-6, the Court stated:

> Once it has been decided that a plaintiff should be accorded *in forma pauperis* status, the court then considers whether the complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B). *Douris v. Huff*, 2008 U.S. App. LEXIS 467, 469 (3d Cir. 2007); *see also Douris v. Newtown Borough, Inc.* 207 Fed.Appx. 242 (3d Cir. 2006). Section 1915(e)(2) provides:
>
> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that --
>
> > (A) the allegation of poverty is untrue; or
> > (B) the action or appeal - -
> > > (i)        is frivolous or malicious;
> > > (ii)       fails to state a claim on which relief may be granted; or

---

3.    The undersigned has been assigned this case for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

           (iii)        seeks monetary relief against a defendant who is immune from such relief.

> 28 U.S.C. § 1915(e)(2).  This statute "is designed largely to discourage the filing of, and waste of, judicial and private resources upon baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (stating that "[dismissals on these grounds are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering [frivolous] complaints").  While the original statute permitted sua sponte dismissal only if an action was frivolous or malicious, Congress included failure to state a claim and seeking monetary relief from a defendant immune from suit as additional grounds for sua sponte dismissal of *in forma pauperis* cases. *Jones v. Bock*, 127 S.Ct. 910, 920, 166 L.Ed.2d 798 (2007); § 1915(e)(2)(B) (2000 ed.); 28 U.S.C. § 1915(d)( (1994 ed.).

*See also Wright v. Loftus*, Civil No. 09-1305, M.D. Pa., 11-20-09 Memorandum, p. 4, 2009 WL 4051244 (M.D. Pa.); *Leininger v. Twoton Inc.*, 2009 WL 1363386, * 2 (M.D. Pa.); *Maynard v. ENT Surgical Assoc.*, Civil No. 09-1993, M.D. Pa. (1-26-10 Memorandum).

       Thus, § 1915(e) obligates the Court to engage in a screening process when a person wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  Despite the fact that Plaintiff is not complaining about prison conditions, § 1915(e)(2) applies to all *in forma pauperis* complaints, and not just to prisoners. *See Grayson v. Mayview State Hosp.*, 293 F3d 103, 110, n. 10 (3d Cir. 2002); *Lopez v. Smith*, 203 F. 3d 1122, 1129 (9th Cir. 2000); *Williams v. Marino,* Civil No. 03-0632, M.D. Pa. January 12, 2004, Memorandum and Order, p. 4.

       Based on the discussion below, we will recommend that the Court dismiss this case for lack of diversity jurisdiction.  Alternatively, we will recommend that the Court transfer venue of this case to the state court in Richmond, Virginia.

**IV.  Discussion.**

       Based on the pleadings, we find that Plaintiff was located in Virginia and Defendants resided in Virginia when Plaintiff and Gray allegedly entered into the oral contracts regarding Plaintiff's personal property and his documents including recordings.  Further, Defendant Gray possessed Plaintiff's stated property at all times in Virginia, and it is in Virginia where Gray

allegedly beached the oral contracts he had with Plaintiff by selling Plaintiff's property and keeping the proceeds for himself and by disseminating the confidential information contained in Plaintiff's documents and recordings. In fact, the only connection this case has with the Middle District of Pennsylvania is Plaintiff's incarceration at LSCI-Allenwood as of March 2009, following the alleged formation of the oral contracts and following most of the alleged breaches of them. Indeed, Plaintiff's connection with the Middle District of Pennsylvania is tenuous at best since his only nexus is that the BOP has recently transferred him to LSCI-Allenwood to serve part of his federal sentence. Moreover, Plaintiff's confinement in the Middle District of Pennsylvania does not make him a Pennsylvania citizen. Plaintiff, as a federal inmate, is not automatically a citizen for purposes of diversity jurisdiction under § 1332 in the state where the BOP confines him.

In *Mitchavi v. New York Daily News*, 2006 WL 2715176, *4 (M. D. Pa.), the Court stated:

> *McCracken v. Murphy* discusses the requirements for federal subject matter jurisdiction as follows:
>
> Generally, there is a presumption against the existence of federal jurisdiction, and the party invoking the federal court's jurisdiction bears the burden of proof. 13A Federal Practice and Procedure § 3522, at 62; *Basso v. Utah Power and Light Co.,* 495 F.2d 906, 909 (10th Cir.1974). A plaintiff bears the burden of proving that diversity of citizenship exists and ordinarily must prove diversity of citizenship exists by a preponderance of the evidence. *See Krasnov v. Dinan,* 465 F.2d 1298, 1301 (3d Cir.1972).
>
> For purposes of determining diversity, state citizenship is equated with domicile. *Krasnov,* 465 F.2d at 1300; *Parr v. Grenko,* 1993 WL 259327, *1, 1993 U.S. Dist. LEXIS 9122, at *3 (E.D .Pa. July 9, 1993). Domicile, however, is not necessarily synonymous with residence; one can reside in one place and be domiciled in another. *Id.* Residence and an intent to make the place of residence one's home are required for citizenship and to establish a new domicile. *Id.* Although the analysis is necessarily case specific, courts have looked to certain factors, including state of employment, voting, taxes, driver's license, bank accounts and assets, and civic and religious associations in determining the citizenship of an individual. *See* Federal Practice & Procedure § 3612, at 530-31; *see also Juvelis v. Snider,* 68 F.3d 648, 654 (3d Cir.1995); *Krasnov,* 465 F.2d at 1301; *Conners v. UUU Products,* No. 03-6420, 2004 WL 834726, *3, 2004 U.S. Dist. LEXIS 6417, at

*8 (E.D.Pa. Mar. 15, 2004); 328 F.Supp.2d 530, 532 (E.D.Pa.2004). Diversity jurisdiction exists only in a judicial district where either any of the defendants reside, where a substantial part of the events giving rise to the claim occurred, or where any of the defendants is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(a). Further, "a prisoner remains a citizen of the state where he lived before being incarcerated unless he plans to live elsewhere once released." *McCracken,* 328 F.Supp.2d at 532 (citations omitted). "For inmates, citizenship for diversity purposes is [in] the state which the inmate was domiciled prior to incarceration, unless the inmate plans to live elsewhere when he is released, in which event citizenship would be that state." *See Flanagan v. Shively,* 783 F.Supp. 922, 935 (E.D.Pa.1992) *(aff'd without opinion,* 980 F.2d 722 (3d Cir.1992); *see also Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1314 (11th Cir.2002). "An inmate does not become a resident of a state merely by virtue of his incarceration there if he was a resident of another state before his incarceration and there is no indication that he intends to relocate to the state of incarceration upon his release." *Flanagan,* 783 F.Supp. at 935.

In his Complaint, Plaintiff does not even allege he is a citizen of Pennsylvania. Rather, he merely states that he "is an incarcerated federal prison at [LSCI-Allenwood] located in White Deer, Pennsylvania." (Doc. 1, p. 1, ¶ 2.). Since Plaintiff has failed to allege his citizenship, "any claims based on diversity of citizenship should likewise be dismissed." *Yunik v. McVey*, 2009 WL 3854096, *5 (W.D. Pa.). As stated, all of Plaintiff's present claims are based on diversity of citizenship, and he attempts to invoke this Court's jurisdiction under § 1332. Plaintiff only alleges that Defendants are Virginia residents. We find that Plaintiff has not met his burden of proving diversity of citizenship exists in this case. Therefore, it does not even appear that citizenship of all Defendants is diverse from that of Plaintiff who resided in Virginia prior to his federal conviction, who was initially confined in Virginia and who it seems will return to Virginia, where his son lives and where his house was, when he is released from confinement. *See Vangura Kitchen Tops, Inc. v. C&C North America, Inc.*, 2008 WL 4540186, *2, n. 3 (W.D. Pa.), citing *Midlantic Nat'l Bank v. Hansen*, 48 F. 3d 693, 696 (3d Cir. 1995)("it is well settled that, in order to sustain diversity jurisdiction, all of the parties on one side of the controversy must be citizens of different states than all of the parties on the other side"). Indeed, Plaintiff gives no indication in this case that he intends to relocate to Pennsylvania when he has fully served his federal sentence.

**9**

Further, Plaintiff is subject to transfer out of LSCI-Allenwood at any time by the BOP, especially since he has no constitutional right to be confined in any particular prison. It is well settled that Plaintiff has no constitutional right to be confined in any particular prison, facility or rehabilitative program. *See Podhorn v. Grondolsky*, 2009 WL 3471299, *2 (3d Cir.) (Per Curiam) citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Kimball v. Walters*, 2007 WL 87897. (M.D. Pa.)(inmate had no constitutional right to be transferred to any particular cell or to any particular prison).

Thus, if Plaintiff is transferred from LSCI-Allenwood, neither he nor any of his claims in the present action would have any connection whatsoever with the Middle District of Pennsylvania. Also, under Pennsylvania's choice of law rules, Virginia law would apply to Plaintiff's claims since they are all state law claims which arose in Virginia between Plaintiff, who was in Virginia at the relevant times, and Gray, who resided in Virginia and held Plaintiff's property in Virginia at all relevant times. There are simply no allegations that any of Plaintiff's claims arose in Pennsylvania, and none of the claims are against Pennsylvania citizens. *See Knipe v SmithKlineBeechman*, 583 F.Supp.2d 602, 613-14 (E.D. Pa. 2008).

If the Court finds that diversity of citizenship exists in this case, we will alternatively recommend that the Court transfer Plaintiff's case to the state court in Richmond, Virginia, since this is the more convenient forum pursuant to 28 U.S.C. §1404(a). The state court in Richmond, Virginia, clearly would have jurisdiction over Defendants and over Plaintiff's claims all of which arose in Virginia. However, if the Court finds that diversity of citizenship does not exist and that Plaintiff is really a citizen of Virginia, then we will recommend that the Court either dismiss this case and grant Plaintiff's *in forma pauperis* motion or that it transfer this case to the state court in Richmond, Virginia.

A court may transfer any civil action for the convenience of the parties or witnesses, or in the interests of justice, to any district where the action might have been brought. 28 U.S.C. §1404(a). Title 28 U.S.C. §1391(b) provides that:

**10**

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*See also Vangura Kitchen Tops, Inc. v. C&C North America, Inc.*, 2008 WL 4540186, *3;

*Eppard v. Certegy Payment Recovery Services, Inc.*, Civil No. 09-1414, M.D. Pa., 2-23-10

Memorandum.

In *Hankins v. Beard*, 2008 WL 2950996, *10 (M.D. Pa.), the Court stated:

It is well settled that a court may transfer any civil action for the convenience of the parties or witnesses, or in the interest of justice, to any district where the action might have been brought. 28 U.S.C. § 1404(a). The United States Supreme Court in *Hoffman v. Blaski,* 363 U.S. 335, 343, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) recognized that under § 1404(a), a civil action may be transferred by a district court to another district court where that action may have been brought by the plaintiff.

In *Brown v. Maue*, 2005 WL 1420776, *1 (M.D. Pa.), the Court stated:

"the purpose of [§ 1404(a) ] is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.* (internal quotations omitted). Although the court has discretion to transfer venue, "a motion to transfer is not to be liberally granted." *Measurement Specialties, Inc. v. Stayhealthy.com,* 275 F. Supp.2d 638, 640 (E.D. Pa. 2003)."

The *Brown* Court considered all of the relevant factors and found that since the alleged actions by Plaintiff Brown occurred while he was an inmate at SCI-Pittsburgh and SCI-Fayette, both located in the Western District of Pennsylvania, since the relevant Defendants were located in the Western District of Pennsylvania, and since "practical considerations dictate[d] that the action should be transferred to the Western District," the Court transferred Plaintiff Brown's Amended Complaint to the Western District of Pennsylvania. *Id.*, *2-*3.

The *Brown* Court stated that courts generally consider the following factors in deciding whether to transfer a case to another district:

(1) the plaintiff's choice of forum; (2) the defendant's preference;
(3) where the claim arose; (4) the convenience of the parties;
(4) (sic) the convenience of the witnesses, but only to the extent that
the witnesses may actually be unavailable for trial in one of the fora;
(5) the location of books and records, similarly limited to the extent
that the files could not be produced in the alternative forum;
(6) the enforceability of the judgment; (7) practical considerations that
could make the trial easy, expeditious, or inexpensive; (8) the
relative court congestion in the competing courts; (9) the local interest
in deciding local controversies at home; (10) the public policies of
the fora; (11) and the familiarity of the trial judge with the applicable
state law.

*Id.* at *2(citation omitted); *Jumara v. State Farm Ins. Co.*, 55 F. 3d 873 (3d Cir. 1995).[4]

We find that, based on the above analysis of the relevant factors as they pertain to the instant case, specifically regarding the listed factors 2, 3, 4, 5, 6, 7, 9, and 11, they all weigh in favor of transferring our Plaintiff's case to the state court in Richmond, Virginia. Significantly, none of the alleged conduct giving rise to Plaintiff's claims occurred in Pennsylvania. *See Paul Green Sch. of Rock Music Franchising, LLC v. Rock Nation*, 2009 WL 129740 (E.D. Pa.).

At all relevant times, and during the formation of the alleged oral contracts, Plaintiff resided within the jurisdiction of the Virginia state court. The named Defendants are residents of Virginia. Defendant Gray at all times received and held Plaintiff's property and documents in Virginia. Defendant Gray has no alleged contacts with Pennsylvania and the Middle District of Pennsylvania, nor does Defendant Jane Doe. Also, all of the alleged state law claims raised by Plaintiff herein occurred in Virginia, where Plaintiff resided at the time the oral contracts were made, where Defendant Gray resided at all relevant times, and where Gray held Plaintiff's property and documents. Significantly, Defendant Gray is not alleged to have held or sold any of Plaintiff's property in Pennsylvania, and he is not alleged to have disseminated any of Plaintiff's confidential information in Plaintiff's documents and recordings in Pennsylvania. Also, Plaintiff and his attorney mailed out Plaintiff's documents to Defendant Gray in Virginia and he

---

4.    The quote from *Brown* contained two factors number (4). .

**12**

is not alleged to have possessed them at any time in Pennsylvania. Nor is Defendant Gray alleged to have beached the oral contracts with Plaintiff in Pennsylvania; rather, he allegedly breached them in Virginia, the same place where they were formed.

Thus, neither of the Defendants are located in the Middle District of Pennsylvania. However, both parties are located in Virginia. Also, all of the pertinent events complained of occurred in Virginia, and the records and documents regarding Plaintiff's criminal case were held and allegedly disseminated in Virginia in violation of the oral contract. All of Plaintiff's present claims arose in Virginia. In fact, Plaintiff readily admits that all of his personal property Defendant Gray held for him was in Richmond, Virginia, and that Gray allegedly sold and kept the proceeds in Virginia. There is also no allegation that Defendant Gray possessed any of Plaintiff's documents in Pennsylvania, and there is no allegation that Defendant performed any of the breaches of his duties in Pennsylvania.

Moreover, none of the events complained of occurred in Pennsylvania, and none of the records and the witnesses regarding Plaintiff's claims are located in Pennsylvania. Further, Plaintiff does not even allege that he is a citizen of Pennsylvania able to presently proceed with his case in this Court in Pennsylvania based on diversity jurisdiction under § 1332. Thus, we find that this case should be dismissed for lack of diversity jurisdiction. Alternatively, we find that, for the convenience of the parties, this case should be transferred to the state court in Richmond, Virginia.

If the Court finds that Plaintiff was not a citizen of Pennsylvania when he filed his present case based only on his March 2009 transfer by the BOP to imprisonment at LSCI-Allenwood to serve a portion of his federal sentence in Pennsylvania and that Plaintiff was in reality a citizen of Virginia who will most likely return Virginia once he completes service of his federal sentence, then Plaintiff has filed his action in an improper forum in the Middle District of Pennsylvania since there is no diversity jurisdiction. If the Court finds that there is no diversity jurisdiction, Plaintiff's case should either be dismissed under 28 U.S.C. § 1406(a) or transferred

**13**

to a proper forum, *i.e.* state court in Richmond, Virginia. *See Vangura Kitchen Tops, Inc. v. C&C North America, Inc.*, 2008 WL 4540186, *3 citing *Jumara v. State Farm Ins. Co.*, 55 F. 3d 873, 878 (3d cir. 1995); *Lafferty v. St. Riel*, 495 F. 3d 72 (3d Cir. 2007).

## V. Recommendation.

Based on the foregoing, it is respectfully recommended that the Court either dismiss this case under 28 U.S.C. §1406(a) or transfer it to a proper forum, *i.e.* state court in Richmond, Virginia, since there is no diversity jurisdiction. In the alternative, if the Court finds diversity jurisdiction exists, it is recommended that, for the convenience of the parties and in the interests of justice, this case should be transferred to the state court in Richmond, Virginia, pursuant to §1404(a). It is also recommended that Plaintiff's *in forma pauperis* motion (Doc. 6) be granted solely for the purpose of filing this action.

s/Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 29, 2010**

**14**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER F. GOAD, SR., | : | CIVIL ACTION NO. **4:CV-10-0711** |
| Plaintiff, | : | |
| | : | (Judge Jones) |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WILLIAM R. GRAY, et al., | : | |
| | : | |
| | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 29, 2010.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                        s/ Thomas M. Blewitt
                                        THOMAS M. BLEWITT
                                        United States Magistrate Judge


Dated: April 29, 2010